```
              UNITED STATES DISTRICT COURT
                       FOR THE
                 DISTRICT OF VERMONT

Paul L. Murphy,                  :
      Plaintiff,                 :
                                 :
   v.                            :   File No. 1:05-CV-30
                                 :
Paul Cotton, M.D.,               :
      Defendant.                 :
```

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
(Papers 15, 23, 25, 31 and 32)

Plaintiff Paul Murphy, a Vermont inmate proceeding *pro se* and *in forma pauperis*, has filed a complaint pursuant to 42 U.S.C. § 1983 claiming inadequate medical care. Specifically, Murphy claims that defendant Paul Cotton failed to provide him with Electro-Convulsive Therapy ("ECT") for his mental health condition. Cotton has moved to dismiss, arguing that the complaint fails to state a claim of constitutionally inadequate medical care, and that Murphy failed to exhaust his administrative remedies. (Paper 15). Also pending before the Court are Murphy's motion for a court order to place him on seizure medication (Paper 23), two motions for voluntary dismissal (Papers 25 and 31), and a motion to amend the complaint (Paper 32). For the reasons set forth below, I recommend that the motions to dismiss (Papers 15, 25 and 31) be DENIED, and the motion to amend

(Paper 32) be GRANTED.  The motion for court order (Paper 23) is DENIED without prejudice.

## Factual and Procedural Background

Murphy's complaint, filed on February 9, 2005, alleges that he has "been seeing Dr. Cotton or one of his employees for almost 2 years now . . . and I have been requesting ECT since 8-03 and I just got it approved for me to be evaluated for ECT.  It has been a battle and I am tired of suffering."  (Paper 4 at 3).  The complaint also states that Murphy filed a grievance with the Department of Corrections, and that he was "waiting for [the] last step."  Id. at 2.  For relief, Murphy seeks nominal, compensatory, and punitive damages.  Id. at 3.

Cotton subsequently filed a motion to dismiss, arguing that Murphy's claim "does not clearly identify the medical condition from which he suffered, the actions taken or not taken, the treatment given or not given, or who he believes was responsible for any alleged misconduct," and is therefore legally insufficient.  (Paper 15 at 1-2).  Cotton also argues, based upon Murphy's concession that the grievance process was not exhausted at the time the complaint was filed, that the

complaint should be dismissed for failure to exhaust administrative remedies.  Id. at 2.

On March 12, 2005, Murphy filed a brief response to the motion to dismiss.  In his response, Murphy claimed that he could demonstrate deliberate indifference to his serious medical needs on the basis of his efforts "to talk to Dr. Cotton."  (Paper 16).  Murphy also argued that he did not need to exhaust his administrative remedies because Dr. Cotton is under contract with the Department of Corrections and is not a state employee.  Id.

On June 14, 2005, Murphy filed a second response to the motion to dismiss, in which he informed the Court that he had begun ECT treatments (Paper 22 at 2).  Nonetheless, Murphy complained that "mental health" had taken him off of his seizure medication "due to the fact that mental health said it would interfere with ECT," and requested a court order mandating that he be given his seizure medication.  Id.[1]  Murphy also supplemented his response to Cotton's exhaustion argument, asserting that

---

[1] The response to Cotton's motion to dismiss has been docketed as Paper 22, while the motion for a court order requiring seizure medication has been docketed as Paper 23.  Papers 22 and 23 are, in fact, the same filing.

3

he had submitted letters to the Department of Corrections office in Waterbury and to the Superintendent at his place of incarceration "because Plaintiff was not getting anywhere with mental health . . . ."  Id. at 1.

On July 8, 2005, Murphy moved to voluntarily dismiss this case.  (Paper 25).  After receiving no opposition to Murphy's motion, and in light of Cotton's pending motion to dismiss, the Court issued an Order requiring Cotton to file any opposition within 10 days and warning that failure to file an opposition might result in dismissal without prejudice.  (Paper 27).  Cotton subsequently opposed the motion arguing, *inter alia*, that the Court was on the verge of granting his motion to dismiss with prejudice, and that Murphy's "eleventh hour" filing should not derail that ruling.  (Paper 28).

On August 2, 2005, Murphy filed a second request for voluntary dismissal.  (Paper 31).  Unlike his first motion, which consisted of a single sentence, Murphy's second motion explained the grounds for his request. "Plaintiff did not complete the grievance process before filing this action which was a mistake on Plaintiff's part and [Cotton's attorney] may be right that my

4

complaint is not enough to allege deliberate indifference." Id. at 1.  Nonetheless, Murphy expressed his desire to amend his complaint to add claims that mental health professionals had not adequately addressed his assaultive behaviors.  Id. at 3-5.[2]  Cotton opposed this second motion as well, again arguing that Murphy has failed to state an Eighth Amendment claim and noting Murphy's admission that he has not yet exhausted the grievance procedure.  (Paper 30).

   The most recent filing in the case is Murphy's motion to amend his complaint, filed on August 8, 2005. (Paper 32).  In this motion, Murphy states that he no longer wishes to dismiss his complaint.  Instead, he wants to amend the complaint, but is "unable to amend [sic] complaint at this moment as Plaintiff recently has filed the grievance #3 and has given the Dept of Corrections 30 days to reply to the grievance as this is the last step in the grievance process." Id. at 1. Murphy further explains that the claims in the proposed amendment "are not clear as of yet and [it] will likely

---

[2] Murphy also refers to other medical issues, most of which have been raised in a separate lawsuit.  See Murphy v. Correctional Medical Services, et al., File No. 1:04-CV-71.

be a couple of weeks before Plaintiff has all the facts needed." Id. Nothing further has been filed with the Court.

## Discussion

I. Exhaustion

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) ("PLRA"), provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The Supreme Court has held that "Congress [in passing the PLRA amendment to 42 U.S.C. § 1997e(a)] has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures." Booth v. Churner, 532 U.S. 731, 741 (2001). The Booth court noted that neither futility nor any other exception would except an inmate from the requirement of exhaustion before a suit could be filed. Id. at 741 n.6. Furthermore, the Supreme Court has held that the exhaustion requirement set forth in § 1997(e) applies to all prison condition suits, "whether

6

they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).

The rule in this Circuit is that exhaustion after filing suit is insufficient. See Neal v. Goord, 267 F.3d 116, 122 (2d Cir. 2001), overruled in part on other grounds by Porter, 534 U.S. at 529-31. Accordingly, when faced with a case where exhaustion was not complete prior to the filing of the complaint, the only action a Court in this Circuit may take is to dismiss the claim. See, e.g., Martinez v. Dr. Williams R., 186 F. Supp. 2d 353, 356 (S.D.N.Y. 2002) ("Exhausting administrative remedies after a complaint is filed will not save a case from dismissal."). Dismissal of a complaint for failure to exhaust must be without prejudice. See Morales v. Mackalm, 278 F.3d 126, 131 (2d Cir. 2002).

In this case, Murphy concedes that he never exhausted his administrative remedies with respect to his claim for ECT. This concession alone is insufficient for dismissal. See Snider v. Melindez, 199 F.3d 108, 113-14 (2d Cir. 1999). As the Second Circuit stated in Snider,

exhaustion is a question of law, and as such cannot be determined solely by "a party's concession (much less by the concession of an unrepresented party)."  Id. at 114 (parenthetical in original).

In this Circuit, the failure to exhaust administrative remedies is treated as an affirmative defense.  See Ziemba v. Wezner, 366 F.3d 161, 163 (2d Cir. 2004); Jenkins v. Haubert, 179 F.3d 19, 28-29 (2d Cir. 1999).  Consequently, the defendant bears the burden of proving the plaintiff's failure to comply with the exhaustion requirement.  See, e.g., Ruocco v. Tung, 2004 WL 721716, at *5 (D. Conn. March 30, 2004) ("By characterizing non-exhaustion as an affirmative defense, the Second Circuit requires the defendants to present proof of non-exhaustion."); Reyes v. Punzal, 206 F. Supp. 2d 431, 433 (W.D.N.Y. 2002); Hallett v. New York State Dep't of Correctional Serv., 109 F. Supp. 2d 190, 196-97 (S.D.N.Y. 2000).  In determining whether an inmate has exhausted his administrative remedies, a court must "first establish from a legally sufficient source that an administrative remedy is applicable" by taking a "careful look at the applicable set of grievance procedures."

Mojias v. Johnson, 351 F.3d 606, 610 (2d Cir. 2003). Some courts have required that defendant meet this burden by presenting records and affidavits documenting both the existence of an adequate administrative process, and the inmate's grievance records.  See, e.g., Ruocco, 2004 WL 721716, at *5-*6 (motion denied where defendants failed to provide "any copies of grievances filed and an affidavit from the grievance coordinator").  No such evidence has been presented here.

With no record of the relevant grievance procedure, the Court cannot analyze whether those procedures apply in this case.  Specifically, the Court cannot review whether Vermont's prison grievance procedures apply in a case of allegedly inadequate medical treatment or, as Cotton argues, a case in which there is a disagreement about medical treatment.  See Ruocco, 2004 WL 721716 at *5 (disagreement about medical treatment explicitly excluded for list of grievable items).  Further, without a record of Murphy's grievance filings, the Court cannot review whether the procedure was exhausted, or whether Murphy's efforts to exhaust were frustrated to the extent that they were not "available."  See, e.g., Abney v.

McGinnis, 380 F.3d 663, 667 (2d Cir. 2004 ); Giano v. Goord, 380 F.3d 670, 674 (2d Cir. 2004); Hemphill v. State of New York, 380 F.3d 680, 687 (2d Cir. 2004). Murphy has also argued that because Dr. Cotton is not a state employee, the grievance procedure is inapplicable. Cotton has not responded to this argument.

    The Court acknowledges that, in all likelihood, this case may be dismissed in the future for failure to exhaust administrative remedies.  It appears from Murphy's concessions that the claims he raises now and seeks to raise in an amended complaint have not been exhausted, and that he is acting under the mistaken belief that he can exhaust the grievance process while his suit is pending in this Court.  Nonetheless, the Second Circuit has clearly placed the burden of showing non-exhaustion upon defendants, and Murphy's concessions do not relieve Cotton of his evidentiary obligations.[3]  I therefore recommend that Cotton's motion to dismiss be DENIED.

---

[3] Because this evidence will include items that go beyond the initial pleadings, any further filings on this issue should be presented pursuant to Fed. R. Civ. P. 56.

II.  <u>Failure to State a Claim</u>

Cotton also argues that Murphy's claims fail on substantive grounds.  To state a claim of inadequate medical care under the Eighth Amendment, Murphy must allege that Cotton was deliberately indifferent to the substantial risk that Murphy would suffer serious harm. <u>See</u> <u>Farmer v. Brennan</u>, 511 U.S. 825, 828 (1994).  Murphy must support his claim with evidence that his condition was so serious that "a condition of urgency, one that may produce death, degeneration, or extreme pain exists," and that Cotton was deliberately indifferent to that condition.  <u>Hathaway v. Coughlin</u>, 99 F.3d 550, 553 (2d Cir. 1996).  "[T]he official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  <u>Farmer</u>, 511 U.S. at 837.

Mere negligence in diagnosing and treating a condition does not violate constitutional rights.  <u>See</u> <u>Estelle v. Gamble</u>, 429 U.S. 97, 105-06 (1976).  "This principle may cover a delay in treatment based on a bad diagnosis or erroneous calculus of risks and costs, or a mistaken decision not to treat based on an erroneous view

11

that the condition is benign or trivial or hopeless, or that treatment is unreliable, or that the cure is as risky or painful or bad as the malady." Harrison v. Barkley, 219 F.3d 132, 139 (2d Cir. 2000).  Certain instances of malpractice, however, "may rise to the level of deliberate indifference; namely, when the malpractice involves culpable recklessness, i.e., an act or failure to act by the prison doctor that evinces 'a conscious disregard of a substantial risk of serious harm.'" Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir. 1998) (quoting Hathaway, 99 F.3d at 553).

The Second Circuit has held that where "deliberate indifference cause[s] an easier and less efficacious treatment to be consciously chosen by the doctors," an Eighth Amendment claim is stated. Williams v. Vincent, 508 F.2d 541, 544 (2d Cir. 1974).  Even if the inmate receives "extensive" medical care, a claim is stated if, as alleged in the case, the provider's culpable recklessness results in a failure to address the gravamen of the inmate's problem. See Archer v. Dutcher, 733 F.2d 14, 16-17 (2d Cir. 1984).  Indeed, a prisoner's preference for a certain treatment plan will not support

12

a claim under the Eighth Amendment, but the treatment plan must adequately treat his ailment.  Chance, 143 F.3d at 703 (citing Dean v. Coughlin, 804 F.2d 207, 215 (2d Cir. 1986)).  "[R]easonably necessary medical care . . . which would be available to [the prisoner] if not incarcerated" must be provided.  Langley v. Coughlin, 888 F.2d 252, 254 (2d Cir. 1989).

Murphy's complaint alleges that he was denied a specific treatment, ECT, for a finite period of time. The complaint is silent with respect to whether Cotton's conduct either constituted "deliberate indifference" or placed Murphy at "substantial risk of serious harm." Chance, 143 F.3d at 703.  Without knowing more about the nature of Murphy's alleged illness, and the extent to which Cotton and the other defendants were aware of that illness and its effects, it is difficult for the Court to find that Murphy's claim states an Eighth Amendment violation.

A Court generally should not dismiss a *pro se* complaint "'without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.'"

13

Thompson v. Carter, 284 F.3d 411, 416 (2d Cir. 2002) (quoting Branum v. Clark, 927 F.2d 698, 705 (2d Cir. 1991)).  Here, it is possible that, with additional factual development, an amended complaint could withstand a motion to dismiss.  Murphy's filings suggest that Cotton and his staff were aware of Murphy's assaultive behaviors and other mental health issues, but did not provide him with adequate treatment.  As a result, Murphy allegedly suffered harm.  Whether or not Cotton's actions, and the results of those actions, rise to a level of constitutional harm will depend upon the facts that are set forth in the complaint and, ultimately, proven to the Court.

Because the Second Circuit requires giving plaintiffs at least one opportunity to amend their claims, I GRANT Murphy's motion to amend (Paper 32), and recommend that the Court allow him 20 days in which to amend his complaint to add facts including, *inter alia*, details relating to the seriousness of his mental illness, the full extent of the harm he suffered as a result of inadequate medical treatment, Cotton's role in his medical care and/or the supervision of that care, and

Cotton's knowledge with respect to the nature and effects of his illness.  The 20 days shall begin to run once the Court has ruled upon this Report and Recommendation.  Failure to a file an amendment within that time may result in dismissal of all claims.  Consistent with this ruling, Cotton's motion to dismiss for failure to state a claim should be DENIED.

III.  <u>Motion for Court Order</u>

Finally, the Court DENIES Murphy's motion for an order requiring that he be placed on seizure medication (Paper 23).  Since that motion was filed, Murphy has twice moved to voluntarily dismiss his claims.  These filings suggest that the seizure issue is no longer pressing.  Furthermore, the Court is always hesitant to order medical treatment without any input from physicians who are familiar with the case.  For these reasons, the motion is DENIED.

<u>Conclusion</u>

For the reasons set forth above, I recommend that Cotton's motion to dismiss (Paper 15) be DENIED.  Also, in light of Murphy's recent motion to amend his complaint, I recommend that his motions for voluntary

dismissal (Papers 25 and 31) also be DENIED.  Murphy's motion to amend his complaint (Paper 32) is GRANTED, and his motion for a court order restoring his seizure medication (Paper 23) is DENIED.

    Dated at Burlington, in the District of Vermont, this 19th day of October, 2005.

                                /s/ Jerome J. Niedermeier
                                Jerome J. Niedermeier
                                United States Magistrate Judge

Any party may object to this Report and Recommendation within 10 days after service by filing with the clerk of the court and serving on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  See Local Rules 72.1, 72.3, 73.1; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b), 6(a) and 6(e).