```
              UNITED STATES DISTRICT COURT
                       FOR THE
                 DISTRICT OF VERMONT
```

Paul L. Murphy,                :
        Plaintiff,             :
                               :
   v.                          :     File No. 1:05-CV-30
                               :
Paul Cotton, M.D.,             :
        Defendant.             :

<u>MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION</u>
(Papers 37, 38, 44, 45, 46, 48, 50, 51, 53, 57, 58, 59
and 61)

Plaintiff Paul Murphy, a Vermont inmate proceeding *pro se* and *in forma pauperis*, claims that he has received inadequate mental health care while incarcerated.  In his initial complaint, Murphy claimed that defendant Paul Cotton, M.D. had failed to provide him with Electro-Convulsive Therapy ("ECT").  Murphy subsequently notified the Court that he had begun receiving ECT, and amended his complaint to allege, among other things, that he was being treated by a nurse practitioner instead of a "real" mental health professional.  In recent filings, Murphy has again shifted the focus of his claims, alleging that he is a danger to others and that Dr. Cotton has failed to prevent him from assaulting fellow inmates.

Dr. Cotton has moved to dismiss and for summary judgment, arguing that the complaint fails to state a

claim of constitutionally inadequate medical care, and that he has no duty to prevent Murphy from harming third parties.  (Paper 15).  Also pending before the Court are Murphy's motions requesting medical records, depositions and a trial.  Because I find that Murphy's allegations fail to state a claim under the Eighth Amendment, I recommend that Dr. Cotton's motions to dismiss and for summary judgment be GRANTED, that all other motions be DENIED as moot, and that this case be DISMISSED.

<u>Factual and Procedural Background</u>

Murphy's initial complaint, filed on February 9, 2005, alleged that he had "been seeing Dr. Cotton or one of his employees for almost 2 years now . . . and I have been requesting ECT since 8-03 and I just got it approved for me to be evaluated for ECT.  It has been a battle and I am tired of suffering."  (Paper 4 at 3).  Dr. Cotton responded with a motion to dismiss, arguing that Murphy's claim "does not clearly identify the medical condition from which he suffered, the actions taken or not taken, the treatment given or not given, or who he believes was responsible for any alleged misconduct."  (Paper 15 at 1-2).  Dr. Cotton also argued that Murphy had not exhausted

the prison grievance procedure.

In response to the motion to dismiss, Murphy claimed that he could demonstrate deliberate indifference to his serious medical needs based upon his efforts "to talk to Dr. Cotton." (Paper 16). On June 14, 2005, Murphy filed a second response to the motion to dismiss, in which he informed the Court that he had begun ECT treatments. (Paper 22 at 2). Nonetheless, Murphy complained that "mental health" had taken him off of his seizure medication "due to the fact that mental health said it would interfere with ECT," and requested a court order mandating that he be given his seizure medication. Id. The Court denied Murphy's request for a Court order. (Paper 33 at 15).

The Court also denied Dr. Cotton's motion to dismiss. Although the Court agreed with Dr. Cotton that, based upon Murphy's factual allegations, it was "difficult . . . to find that Murphy's claim states an Eighth Amendment violation," the Court allowed Murphy an opportunity to amend his complaint. (Paper 33 at 13-14) (citing Thompson v. Carter, 284 F.3d 411, 416 (2d Cir. 2002) (district court should grant leave to amend at

3

least once when liberal reading of complaint gives any indication that a valid claim might be stated)).

> Because the Second Circuit requires giving plaintiffs at least one opportunity to amend their claims, I GRANT Murphy's motion to amend (Paper 32), and recommend that the Court allow him 20 days in which to amend his complaint to add facts including, *inter alia*, details relating to the seriousness of his mental illness, the full extent of the harm he suffered as a result of inadequate medical treatment, Cotton's role in his medical care and/or the supervision of that care, and Cotton's knowledge with respect to the nature and effects of his illness.

Id. at 14-15.  On the question of exhaustion, the Court cited Second Circuit precedent for the proposition that a defendant must provide evidence of non-exhaustion, even when the plaintiff admits that he has not exhausted his administrative remedies.  Id. at 7-8 (citations omitted).

In accordance with the Court's ruling, Murphy filed a timely amended complaint.  (Paper 36).  The amended complaint alleges that because of this lawsuit, Dr. Cotton has stopped treating Murphy directly, and that instead Murphy is seeing nurse practitioner "Jerry" each Thursday.  Murphy alleges that this lack of direct treatment by Dr. Cotton has caused problems on three occasions.  First, in September, 2005, Murphy requested

anti-depressants and Jerry allegedly took a week to consult with Dr. Cotton before prescribing the requested medication.  Second, in November, 2005, Murphy requested that he be placed on a suicide watch and that he be given drugs to calm himself.  The suicide watch was provided, but Dr. Cotton did not provide additional drugs.  It is not clear from the amended complaint whether Murphy's treatment by a nurse practitioner played a role in Dr. Cotton's actions.  Third, again in November 2005, Murphy asked Jerry for a higher dosage of anti-depressants, but was refused.  In this third allegation, Dr. Cotton's involvement is unspecified.  The amended complaint also claims that Dr. Lorbati, who is not a party in this case, wrongfully discontinued his seizure medications.

For relief, Murphy seeks access to a "real Mental Health Doctor," and asks that he be provided a physician "on call who can prescribe medication in a [sic] emergency for Plaintiff instead of Dr. Cotton who refuses to treat plaintiff."  (Paper 36 at 2).  In addition to injunctive relief, Murphy requests damages of $50,000.

Several months after filing his amended complaint, Murphy filed a motion for summary judgment.  His summary

5

judgment motion did not discuss any of the issues raised in either his initial complaint or his amended complaint. Instead, Murphy's motion claimed that "sometimes the voices tell plaintiff to hurt people to wit: sex offenders and that I suffer from intrusive memories, flashback [sic], and my mood, go [sic] up and down." (Paper 52 at 1).  He alleges that he has warned mental health providers of his impulses to assault others, but that they have taken "no precautions to keep me away from sex offenders."  Id. at 2  As a result of his behavior, Murphy claims that he received a sentence of "23 and 24 months."  Id.

After filing his motion for summary judgment, Murphy withdrew the motion and instead moved for a hearing (Paper 58) and a trial (Paper 61) on the same assault-related issues.  Murphy has also filed a series of motions seeking discovery.  Dr. Cotton has cross-moved for summary judgment on the assault issue.  In his motion, Dr. Cotton argues that, under Vermont law, he has no duty "to protect the perpetrator of a crime from having to serve jail time if he is punished for his criminal acts."  (Paper 57 at 2).

## Discussion

A motion to dismiss should only be granted if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see Weixel v. Board of Educ. of New York, 287 F.3d 138, 145 (2d Cir. 2002). When deciding a motion to dismiss, courts must accept all factual allegations in the complaint as true, and draw all reasonable inferences in the nonmovant's favor. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002) (citing Gregory v. Daly, 243 F.3d 687, 691 (2d Cir. 2001)). When a plaintiff is proceeding *pro se*, courts must construe the complaint liberally. See Haines v. Kerner, 404 U.S. 519, 520 (1972); see also Boddie v. Schnieder, 105 F.3d 857, 860 (2d Cir. 1997).

To state a claim of inadequate medical care under the Eighth Amendment, Murphy must allege that Dr. Cotton was deliberately indifferent to the substantial risk that he would suffer serious harm. See Farmer v. Brennan, 511 U.S. 825, 828 (1994). Murphy must support his claim with evidence that his condition was so serious that "a

condition of urgency, one that may produce death, degeneration, or extreme pain exists," and that Cotton was deliberately indifferent to that condition. Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996). "[T]he official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.

Mere negligence in treating a condition does not violate constitutional rights. See Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). "This principle may cover a delay in treatment based on a bad diagnosis or erroneous calculus of risks and costs, or a mistaken decision not to treat based on an erroneous view that the condition is benign or trivial or hopeless, or that treatment is unreliable, or that the cure is as risky or painful or bad as the malady." Harrison v. Barkley, 219 F.3d 132, 139 (2d Cir. 2000). Moreover, differences of opinion as to appropriate treatment do not constitute deliberate indifference. As the Second Circuit has noted, "[s]o long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give

8

rise to an Eighth Amendment violation." Chance, 143 F.3d at 703.

Murphy's complaint originally alleged that he was denied ECT for a finite period of time. The complaint did not state the nature of Murphy's mental illness, and failed to allege that Dr. Cotton was responsible for the ECT decision. Reading the complaint liberally, the Court allowed that by alleging additional facts, Murphy might be able to bring a cognizable claim in an amended pleading. In his amended complaint, however, Murphy makes no mention of the ECT issue, and has not argued the issue since his initial filing. Therefore, to the extent that Murphy is still bringing his ECT claim, the allegations in the initial complaint were insufficient to show either deliberate indifference or a substantial risk of serious harm, and the claim should be DISMISSED.

In his amended complaint, Murphy complains that he was not given direct access to a doctor. He concedes, however, that he was treated by a health care professional on a weekly basis. The only harm alleged as a result of his treatment by a non-physician was a brief delay in providing anti-depressants, and subsequent

9

refusals to either provide or increase medications.  As set forth below, these allegations fall short of asserting a viable constitutional claim.

A delay in providing an inmate with treatment of a serious medical condition can give rise to a finding of an Eighth Amendment violation when the condition ignored is "life-threatening and fast-degenerating," or where treatment is withheld over a lengthy period of time during which the plaintiff complains of extreme pain. See Sully-Martinez v. Glover, 2001 WL 1491278, at *5 (S.D.N.Y. Nov. 26, 2001) (citing Liscio v. Warren, 901 F.2d 274, 277 (2d Cir. 1990); Archer v. Dutcher, 733 F.2d 14, 16-17 (2d Cir. 1984)).  There are no such claims in this case.  Murphy alleges that because he was denied medication for a week, he suffered from depression.  While depression itself may be a serious condition, there is no allegation that the delay in this case resulted in the level of harm required for an Eighth Amendment claim.  See, e.g., Smith v. Carpenter, 316 F.3d 178, 188-89 (2d Cir. 2003) (noting that "[a]lthough Smith suffered from an admittedly serious underlying condition, he presented no evidence that the two alleged episodes of missed

medication resulted in permanent or on-going harm to his health); Atkins v. County of Orange, 372 F. Supp. 2d 377, 415 (S.D.N.Y. 2005) (claim dismissed where plaintiff failed to allege that three-day delay in psychiatric care resulted in "death, degeneration, or extreme pain").

Furthermore, as noted above, there is no allegation that Dr. Cotton caused the delay, much less that he deliberately interfered with Murphy's care.  Deliberate indifference must be evidenced by proof that individuals named as defendants intentionally denied, delayed access to or interfered with treatment.  Estelle, 429 U.S. at 104-06; Hathaway, 37 F.3d 63, 66-68; Veloz v. New York, 35 F. Supp. 2d 305, 311 (S.D.N.Y. 1999).  Here, Murphy claims that the nurse practitioner hesitated before prescribing an anti-depressant, and waited a week "when he could have just paged Doctor Cotton and discussed this case with him . . . ."  (Paper 36 at 1).  The nurse practitioner is not a party in this case, and Murphy's claim does not directly implicate Dr. Cotton as the cause of the alleged delay.  The claim against Dr. Cotton with respect to a delay in medication is, therefore, without merit.

The remaining claims in the amended complaint pertain to denials of medication.  The first claim alleges that, in November, 2005, Murphy had "a few problems and requested to be put on suicide watch which was granted . . . ."  Id.  Murphy claims that despite the suicide watch, Dr. Cotton refused to provide medication "to calm [him] down . . . and left Plaintiff in a very bad state."  In other words, while Murphy believed that he required medication to recover from his "problems," Dr. Cotton did not prescribe any such medication.

   As discussed above, a mere difference of opinion as to treatment is insufficient for an Eighth Amendment claim.  See Chance, 143 F.3d at 703.  While prisoners have a right to medical care, they do not have a right to choose a specific type of treatment.  See Grant v. Burroughs, 2000 WL 1277592, at *5 (S.D.N.Y. Sept. 8, 2000) (prisoner denied pain medication does not have a constitutional right to treatment of his choice).  Murphy does not allege that Dr. Cotton believed the medication to be appropriate and, despite this belief, denied appropriate care.  The only claim is that Dr. Cotton failed to provide drugs to an inmate who believed he

needed them.  As such, the claim is legally insufficient and should be DENIED.  See Ponder v. Goord, 2004 WL 1573880, at *4 (W.D.N.Y. May 22, 2004) (amended complaint against medical personnel dismissed where prisoner alleged denial of pain medication).

    The second denial of medication claim does not mention Dr. Cotton specifically.  The entire allegation states that "Plaintiff spoke to 'Jerry' Nurse Practitioner last week and requested to have my medication raised for my anti-depressant because the amount they have me on really is not helping Plaintiff is suffering severe depression which he was aware of and denied to raise plaintiffs [sic] medication."  (Paper 36 at 1-2).  A plain reading of this claim reveals an allegation against the nurse practitioner.  In fact, in the previous paragraph, Murphy explained that it was the nurse practitioner who, after consulting with Dr. Cotton, prescribed the anti-depressant initially.  However, even if the Court were to give the allegation an extremely liberal reading and construe the "he" in "he was aware" as referring to Dr. Cotton, the allegation merely states a difference of opinion about proper treatment.  For

reasons discussed above, such a claim is insufficient.

In sum, the allegations in the amended complaint fall short of stating an Eighth Amendment claim against Dr. Cotton.  There is no direct claim that Dr. Cotton acted with deliberate indifference, or that his deliberate actions were taken with the knowledge that he was likely to cause serious medical harm.  At most, Murphy disagrees with at least one, and possibly two, of Dr. Cotton's treatment decisions.  Murphy is also concerned that Dr. Cotton, or some other physician, is not available for immediate prescription consultation.  While Murphy's concern may be valid, his amended complaint fails to set forth a claim of constitutional proportion.

When this Court ordered Murphy to amend his complaint, it provided specific suggestions for the next pleading.  Those suggestions included providing details about the seriousness of Murphy's mental illness, the full extent of the harm he suffered as a result of inadequate medical treatment, Dr. Cotton's role in his medical care and/or the supervision of that care, and Dr. Cotton's knowledge with respect to the nature and effects

of his illness.  Despite the Court guidance, Murphy's amended complaint remains deficient and should be DISMISSED.

The final issue is Murphy's recent claim relating to his propensity for assaultive behavior.  Although this claim has not been asserted in pleadings thus far, Dr. Cotton has responded to its merits.[1]  The essence of the claim is that Dr. Cotton is aware of Murphy's hatred for sex offenders, and of the fact that Murphy seeks out such offenders and assaults them.  Dr. Cotton has allegedly failed to curb Murphy's assaultive behavior and, according to Murphy, therefore owes money damages to compensate for the extra prison time Murphy has been forced to serve.

Dr. Cotton may have a duty, in some cases, to protect third parties from assaults by an inmate.  <u>See</u>, <u>e.g.</u>, <u>Sims v. Bowen</u>, 1998 WL 146409, at *3 (N.D.N.Y. March 23, 1998); <u>Peck v. Counseling Serv. Of Addison County, Inc.</u>, 146 Vt. 61, 65 (1985).  The Court is aware

---

[1] Dr. Cotton has submitted his motion as a cross-motion for summary judgment.  Neither party has submitted a statement of material facts in support of their summary judgment motions, and the issue that Murphy raises appears to present a question of law.  Because Murphy has not asserted these claims previously, the Court will accept them as further amendments to his complaint, and will treat Dr. Cotton's motion as a motion filed pursuant to Fed. R. Civ. P. 12(b).

of no authority, however, under which Dr. Cotton could be liable to the *assaulting* inmate for such an attack. Furthermore, it is not clear from Murphy's motion that Dr. Cotton had any control over either Murphy's housing or the extent of his punishment.

Even assuming that a psychiatrist has a duty to the assaulter, Murphy's claim is, at most, a claim of negligence. Murphy argues that Dr. Cotton and his staff should have kept him away from sex offenders and failed to do so. Murphy does not claim, however, that Dr. Cotton acted deliberately, or that Dr. Cotton was aware that he would suffer harm sufficient to rise to the level of an Eighth Amendment violation. Cf. Calhoun v. New York State Div. Of Parole Officers, 999 F.2d 647, 654 (2d Cir. 1993). Absent a viable federal claim, this Court has no jurisdiction to hear a claim of common law negligence.

## Conclusion

For the reasons set forth above, I recommend that Dr. Cotton's motions to dismiss and for summary judgment (Papers 37 and 57) be GRANTED, and that this case be DISMISSED. Accordingly, I recommend that Murphy's

motions for discovery (Papers 38, 46, 50, 51, 53 and 59), for a hearing (Paper 58) and for trial (Papers 44, 45, 48 and 61) be DENIED as moot.

   Dated at Burlington, in the District of Vermont, this 9th day of August, 2006.

/s/ Jerome J. Niedermeier<br>
Jerome J. Niedermeier<br>
United States Magistrate Judge

Any party may object to this Report and Recommendation within 10 days after service by filing with the clerk of the court and serving on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  See Local Rules 72.1, 72.3, 73.1; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b), 6(a) and 6(e).